**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| James Lewis,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Eli Lilly and Company, *et al.*,<br><br>　　　　　Defendants. | No. CV-19-05740-PHX-JJT<br><br>**ORDER** |

　　　　At issue is Plaintiff's Motion to Remand (Doc. 13, "Mot."). Defendant Eli Lilly and Company ("Eli Lilly") filed a Response (Doc. 17, "Resp."), which Defendant Sedgwick Claims Management Services, Inc. ("Sedgwick") joined (Doc. 19), and Plaintiff filed a Reply (Doc. 20, "Reply"). In this Order, the Court will also resolve Plaintiff's Motion to Stay Proceedings Pending Resolution of Plaintiff's Concurrently-Filed Motion to Remand (Doc. 14). For the following reasons, the Court denies Plaintiff's Motion to Remand.

**I.      BACKGROUND**

　　　　Plaintiff worked as an Executive Sales Representative for Eli Lilly for 15 years. (Doc. 1 Ex. 1, Complaint ("Compl.") ¶ 4.) On November 6, 2018, Plaintiff was severely injured in a car accident while working. He took sick leave and attempted to work a few days throughout November, but ceased working due to his injuries by December 3, 2018. (Compl. ¶ 5.) Plaintiff applied for short-term disability benefits under Eli Lilly's Illness Pay Program. The Illness Pay Program is managed and administered by Sedgwick, a third-party claims administrator. (Compl. ¶ 11.)

Defendants approved Plaintiff's application for Illness Pay on December 3, 2018 and began paying benefits retroactively from the date of November 7, 2018. (Compl. ¶ 8.) Defendants later terminated Plaintiff's Illness Pay effective April 9, 2019. (Compl. ¶ 55.) Plaintiff alleges the termination was wrongful and done in bad faith, and that it interfered with his eligibility for long-term benefits under a separate benefits plan, the Extended Disability Leave ("EDL") Plan. (Compl. ¶¶ 77–82.)

Plaintiff filed this case in state court on October 8, 2019. The Complaint contains four counts: (1) breach of contract against Eli Lilly; (2) breach of the duty of good faith and fair dealing against Eli Lilly; (3) aiding and abetting Eli Lilly's breach of the duty of good faith and fair dealing against Sedgwick; and (4) in the alternative, breach of the duty of good fair and fair dealing as a "joint venturer" of Eli Lilly against Sedgwick.

Defendants timely removed the action to this Court, asserting diversity jurisdiction. (Doc. 1.) They also contend Plaintiff's lawsuit seeks a declaration and enforcement of his rights under the EDL Plan, which is governed by the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. Defendants therefore argue this Court has federal question jurisdiction through ERISA's complete preemption provision. Plaintiff timely moved to remand.

## II.  LEGAL STANDARD

Federal courts may exercise removal jurisdiction over a case only if subject matter jurisdiction exists at the time of removal. 28 U.S.C. § 1441(a); *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). Federal courts have subject matter jurisdiction over cases arising under the Constitution or the laws of the United States. 28 U.S.C. § 1331.

Federal courts also have subject matter jurisdiction over actions between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The notice of removal "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). Evidence establishing the amount in controversy is required only when the plaintiff contests, or the court questions, the

defendant's allegation of the amount in controversy. *Id.* When this occurs, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.*

In assessing the amount in controversy, a court may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018). And while a damages assessment may require "a chain of reasoning that includes assumptions, . . . those assumptions cannot be pulled from thin air but need some reasonable ground underlying them." *Ibarra v. Manheim Inv.*, 775 F.3d 1193, 1199–1200 (9th Cir. 2015). Thus, a court may consider, *inter alia*, evidence of jury awards or judgments in similarly situated cases, settlement letters, affidavits, and declarations. *See, e.g.*, *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002); *Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 & n.4 (D. Ariz. 2003).

### III. ANALYSIS

#### A. Diversity Jurisdiction

The parties do not dispute that complete diversity exists. The issue is whether the amount in controversy exceeds $75,000, excluding interest and costs. *See* 28 U.S.C § 1332(a).

Defendants assert the specific damages demanded under Count 1 alone approximate $60,000. (Doc. 1 at 6.) The Complaint alleges the amount of unpaid Illness Pay owed to Plaintiff was approximately $50,000 as of September 30, 2019—presumably when the Complaint was drafted. (Compl. ¶ 88.) Defendant stopped paying Plaintiff Illness Pay on April 9, 2019. This computes to approximately $287 of Illness Pay per day ($50,000 divided by 174 days). However, Plaintiff requests an award of "the maximum amount of pay available" under the Illness Pay Program, which provides for Illness Pay for up to twelve months—or one year from when he began receiving benefits on November 7, 2018. (Compl. ¶¶ 14, 160.) All told, Plaintiff seeks 211 days of unpaid Illness Pay at

approximately $287 per day, or about $60,557. (Doc. 1 at 6.) The Court agrees with this calculation and Plaintiff did not dispute it.

Defendants contend the remaining damages and attorneys' fees at stake undoubtedly bring the total amount in controversy over $75,000. In addition to the specific alleged contract damages in Count 1, Plaintiff brings tort claims associated with a breach of the duty of good faith and fair dealing. He requests compensatory damages against each Defendant "for the emotional distress, humiliation, inconvenience, anxiety and other harm" suffered due to their breach. (Compl. ¶ 160.) Moreover, Plaintiff seeks punitive and exemplary damages against Defendants "in an amount sufficient to punish [] and deter" them. (Compl. ¶ 160.)

Defendants cite to cases in which juries have awarded plaintiffs in disability benefits cases tort damages equaling many multiples of the underlying contract damages, and punitive damages dwarfing those compensatory damages. *E.g.*, *Leavey v. UnumProvident Corp.*, No. CV-02-2281-PHX-SMM, 2006 WL 1515999 (D. Ariz. May 26, 2006) (awarding $809,028 in underlying policy benefits, $4,000,000 in compensatory damages for the breach of good faith and fair dealing, and $15,000,000 in punitive damages); *Greenberg v. Paul Revere Life Ins. Co.*, No. CV-99-0154-PHX-SRB, 2001 WL 1940763 (D. Ariz. 2001), aff'd, 91 F. App'x 539 (9th Cir. 2004) (awarding the plaintiff $550,000 in disability benefits and $2,400,000 in punitive damages on his disability insurance bad faith claim). An award of compensatory and punitive damages in the combined amount of approximately $14,500—or one-quarter of the underlying alleged contract damages—is on the low-end in a bad faith case. In the very least, it is a reasonable estimate for purposes of establishing the amount in controversy.

Defendants also note Plaintiff requests attorneys' fees. (Resp. at 3–4.) Attorneys' fees are included in the amount in controversy where an underlying statute authorizes an award, as A.R.S. § 12-341.01 does here. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *see also Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1142 (Ariz. 1982). The total amount of attorneys' fees at stake—not just those incurred at the time of

removal—are included in the calculation. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Although Defendants did not provide an estimate of the fees anticipated to accrue in defending this action, the Court is satisfied that attorneys' fees, together with the alleged contract, compensatory, and punitive damages, more than satisfy the amount in controversy requirement.[1]

Plaintiff did not address Defendants' points above. Rather, he relies on the fact that he served with the Complaint an offer of settlement for $65,000. (Mot. Ex. 1.) Plaintiff argues this conclusively establishes the amount in controversy as less than $75,000 and Defendants' rejection of the offer indicates that they themselves do not believe the requisite amount is met. A settlement offer can be relevant evidence of the amount in controversy, *see Cohn*, 281 F.3d at 840, but is not dispositive. Rather, the amount is based on what is *at stake* in the litigation, and includes all relief claimed at the time of removal to which Plaintiff would be entitled if he prevailed. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 418 (9th Cir. 2018). As described in detail above, the amount at stake—derived from the allegations of the Complaint—more likely than not exceeds $75,000. Defendants could have rejected the settlement offer for any number of reasons, including a belief that Plaintiff will ultimately not prevail on the merits.

Finally, Plaintiff argues for the first time in his Reply that Defendants' motions to dismiss (Docs. 10, 11) for failure to state a claim show they believe the value of Plaintiff's claim is zero. (Reply at 5.) This argument lacks merit. In the primary case cited by Plaintiff, the Ninth Circuit rejected a defendant's attempt to remove through a combined theory of implied preemption and fraudulent joinder, *i.e.*, the defendant argued the only claim against a non-diverse defendant was preempted and thus invalid, and therefore the non-diverse defendant should not be considered for purposes of establishing diversity. *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009). Here, the basis for removal was a straightforward amount in controversy analysis based on the Plaintiff's own allegations at

---

[1] The parties dispute whether the EDL benefits factor into the amount in controversy. Because the Court resolves the issue on the Illness Pay and associated tort damages alone, it need not conclude whether the EDL benefits are part of the calculus for purposes of 28 U.S.C. § 1332.

the time of removal and not dependent on a separate, merits-based finding of preemption. Again, the amount in controversy is evaluated based on what Plaintiff would recover if he prevailed on all claims—not whether the Defendants believe he will prevail. In short, nothing precludes the commonplace practice of a defendant removing a case that could have been originally brought in federal court, and then subsequently moving to dismiss it for failure to state a claim.

### B.      Federal Question Jurisdiction

Defendants also removed on federal question grounds. *See* 28 U.S.C. § 1331. They argue Plaintiff seeks to "enforce his rights" or "clarify his rights to future benefits under the terms of" an ERISA-governed plan, the EDL Plan. *See* 29 U.S.C. § 1132(a)(1)(B). A claim that could be brought pursuant to the just-quoted enforcement section of ERISA is completely preempted by ERISA, even if it is styled as a state law claim. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004). This represents one of the limited exceptions to the well-pleaded complaint rule. *Id.* at 207–08; *see also Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149 (1908).

The Complaint alleges that Plaintiff is entitled to a judgment finding he has satisfied the criteria for eligibility under the EDL Plan. (Compl. ¶¶ 103, 122, 160.) However, Plaintiff does not assert a claim for declaratory relief, and the Court is not convinced Plaintiff's requested relief is a remedy for a breach of contract or breach of the duty of good faith and fair dealing claim. Accordingly, the Court declines to find removal jurisdiction on this basis. However, because it has diversity jurisdiction over the action, Plaintiff's Motion to Remand is denied.

### C.      Outstanding Motions

As noted, Defendants each filed a Motion to Dismiss (Docs. 10, 11). In lieu of responding directly to those motions, Plaintiff filed a Motion to Stay the briefing schedule of them (Doc. 14) pending the Court's ruling on the instant Motion to Remand. The Motion to Remand now resolved, Plaintiff has 14 days from the date of this Order to respond to Defendants' Motions to Dismiss.

IT IS THEREFORE ORDERED denying Plaintiff's Motion to Remand (Doc. 13).

IT IS FURTHER ORDERED denying as moot Plaintiff's Motion to Stay (Doc. 14). Plaintiff has 14 days to file his Response(s) to Defendants' Motions to Dismiss.

Dated this 1st day of September, 2020.

Honorable John J. Tuchi
United States District Judge